RECEIPT # 379613

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

FILED
2010 MAY 26 AM 11:13

| | |
|---|---|
| IN RE: )<br><br>WEST COAST INTERVENTIONAL PAIN )<br>MEDICINE, INC., )<br><br>IN RE: )<br><br>Surgical Leasing Company, Inc., San Diego )<br>Pain Management Consultants, Inc., CV )<br>Surgical Management, Inc., The Pain )<br>Management Group, Inc., Medical Facilities )<br>Management G.P., )<br><br>Debtors/Debtor-in-Possession. )<br>────────────────────────── )<br><br>CV SURGICAL MANAGEMENT, INC., )<br>WEST COAST INTERVENTIONAL PAIN )<br>MEDICINE, INC., PAIN INTERVENTION )<br>THERAPY OF SAN DIEGO, INC., )<br>PEMCOR, INC. and )<br>P. KEVIN BARKAL, M.D. )<br>Plaintiffs, )<br>v. )<br><br>JEFFREY VALLANDINGHAM, D.C., )<br>EL CAMINO INJURY & )<br>REHABILITATION, INC., EL CAMINO )<br>MEDICAL CENTER, INC., WAR, INC., )<br>BRETT K. ALLAN, D.C., CHULA VISTA )<br>CHIROPRACTIC, INC., DIRECT HEALTH )<br>MEDICAL CENTER, INC., KELLETT, )<br>INC., BEACH CITIES SURGERY )<br>CENTER, INC., PAIN INTERVENTION )<br>THERAPY OF SAN DIEGO, INC., NEW )<br>LIFE MEDICAL CENTER, INC., WALTER )<br>H. HUNTER, JR., JODY )<br>VALLANDINGHAM, and JAMIE ALLAN )<br>Defendants. ) | Case No.  09-24379-jpk<br><br><br><br>Cases:  09-24389, 09-24381, 09-24391,<br>09-24392, 09-24676<br>(Jointly Administered)<br><br><br><br><br><br><br><br><br><br>Adversary No.<br>Honorable J. Philip Klingeberger<br>Bankruptcy Judge |

**COMPLAINT AT LAW**

Come now the Plaintiffs and Debtors in Possession, C.V. Surgical Management, Inc. (CV Surgical), West Coast Interventional Pain Medicine, Inc. (West Coast), Pain Intervention Therapy of San Diego, Inc. (PITS), Pemcor, Inc. (Pemcor), and P. Kevin Barkal, M.D. (Barkal), by and through their attorney, Joseph Giovanazzi, and for their Complaint against the Defendants, Jeffrey Vallandingham, D.C., El Camino Injury and Rehabilitation, Inc., El Camino Medical Center, War, Inc., Brett K. Allan, D.C., Chula Vista Chiropractic, Inc., Direct Health Medical Center, Inc., Kellett, Inc., Beach Cities Surgery Center, Inc., Pain Intervention Therapy of San Diego, Inc., New Life Medical Center, Inc., Walter H. Hunter, Jr., Jody Vallandingham, Jamie Allan, and Does 1 - 10, allege and state the following:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. Sections 157 and 1334.

2.      This Adversary Proceeding is a "core" proceeding within the meaning of 26 U.S.C. Section 157(b)(2)(A) and (O).

3.      The matter in controversy exceeds $75,000.00 exclusive of interest and costs.

4.      Venue for this Adversary Proceeding is proper in this Court pursuant to 28 U.S.C. Section 1409(a).

5.      The statutory predicates for the relief requested by CV Surgical, S.D.P.M.C., PITS, Pemcor and Barkal in this Complaint are Rules 7001.

6.      By this Complaint, CV Surgical, West Coast, PITS, Pemcor and Barkal seek the entry of an Order granting a monetary Judgment on behalf of CV Surgical, West Coast, PITS, Pemcor and Barkal's Chapter 11 case to and for the benefit of certain non-debtors or, alternatively, enjoining Jeffrey Vallandingham, D.C., El Camino Injury and Rehabilitation, Inc., El Camino Medical Center, War, Inc., Brett K. Allan, D.C., Chula Vista Chiropractic, Inc., Direct Health Medical Center, Inc., Kellett,

Inc., Beach Cities Surgery Center, Inc., Pain Intervention Therapy of San Diego, Inc., New Life Medical Center, Inc., Walter H. Hunter, Jr., Jody Vallandingham, Jamie Allan, and Does 1 - 10 from litigation pending in Courts other than the Bankruptcy Court.

## THE PARTIES

7.      That C.V. Surgical Management, Inc. (CV Surgical) is a California Corporation and maintains its principle place of business at P.O. Box 1966, Highland, Indiana.

8.      That San Diego Pain Management Consultants, Inc. (S.D.P.M.C.) is an Indiana Corporation and maintains its principle place of business at P.O. Box 1966, Highland, Indiana.

9.      That Pain Intervention Therapy of San Diego, Inc. (PITS) is a California Corporation whose address is currently unknown.

10.     That Pemcor, Inc. (Pemcor) is an Indiana Corporation and maintains its principle place of business at P.O. Box 1966, Highland, Indiana.

11.     Barkal is an Indiana resident and President of CV Surgical, S.D.P.M.C., PITS and Pemcor, whose address is 8445 Oakwood Avenue, Munster, Indiana.

12.     Jeffrey Vallandingham, D.C. (Vallandingham) is a chiropractor duly licensed to practice in the State of California and, at all times material herein, did maintain an office for that purpose, whose address is currently unknown.

13.     El Camino Injury and Rehabilitation, Inc. (El Camino Injury) is a medical facility, duly licensed to practice in the State of California and, at all times material herein, did maintain an office for that purpose, whose address is currently unknown.

14.     El Camino Medical Center (El Camino Medical) is a medical facility, duly licensed to practice in the State of California and, at all times material herein, did maintain an office for that purpose, whose address is currently unknown.

15.     War, Inc. (War) is a medical facility, duly licensed to practice in the State of California and, at all times material herein, did maintain an office for that purpose, whose address is currently unknown.

16.     Brett K. Allan, D.C. (Allan) is a chiropractor duly licensed to practice in the State of California and, at all times material herein, did maintain an office for that purpose, whose address is currently unknown.

17.     Chula Vista Chiropractic, Inc. (Chula Vista) is a medical facility, duly licensed to practice in the State of California and, at all times material herein, did maintain an office for that purpose, whose address is currently unknown.

18.     Direct Health Medical Center, Inc. (Direct Health) is a medical facility, duly licensed to practice in the State of California and, at all times material herein, did maintain an office for that purpose, whose address is currently unknown.

19.     Kellett, Inc. (Kellett) is a medical facility, duly licensed to practice in the State of California and, at all times material herein, did maintain an office for that purpose, whose address is currently unknown.

20.     Beach Cities Surgery Center, Inc. (Beach Cities) is a medical facility, duly licensed to practice in the State of California and, at all times material herein, did maintain an office for that purpose, whose address is currently unknown.

21.     Pain Intervention Therapy of San Diego, Inc. (PITS) is a medical facility, duly licensed to practice in the State of California and, at all times material herein, did maintain an office for that purpose, whose address is currently unknown.

22.     New Life Medical Center, Inc. (New Life) is a medical facility, duly licensed to practice in the State of California and, at all times material herein, did maintain an office for that purpose, whose address is currently unknown.

4

23.     Walter H. Hunter, Jr. (Hunter) is a attorney, and it is presently unknown if he is or is not licensed to practice law in the State of California and, at all times material herein, did maintain an office for that purpose, whose address is presently unknown

24.     Jody Vallandingham is the spouse of Jeffrey Vallandingham, D.C. and is a co-signer to the Beach Cities Partnership Agreement and whose address is presently unknown.

25.     Jamie Allan is the spouse of Brett K. Allan, D.C., and is a co-signer to the Beach Cities Partnership Agreement and whose address is presently unknown.


## RELEVANT FACTUAL BACKGROUND

26.     This is a fraud action by Plaintiff Pemcor, Inc., a California Corporation, hereinafter referred to as "Pemcor", one of three (3) equal, solely-owned corporate General Partners in Defendant Beach Cities Surgery Center, LP, a California Limited Partnership, hereinafter referred to as "Beach Cities", against the other two (2) equal, solely-owned, corporate General Partners, Defendants War, Inc., a California Corporation, hereinafter referred to as "War", and Kellett, Inc., a California Corporation, hereinafter referred to as "Kellett", for their breaches of their Partnership fiduciary duties, and for their ongoing defiance of Defendant Beach Cities' partnership agreement, hereinafter referred to as "Partnership Agreement", the governing instrument of the Partnership.

27.     This fraud action is also brought by Plaintiff P. Kevin Barkal, M.D., hereinafter referred to as "Barkal", one of three (3) equal shareholders in Defendant Pain Intervention Therapy of San Diego, Inc., a California Corporation, hereinafter referred to as "PITS", against the other two (2) equal shareholders in Defendant PITS, Defendants Jeffrey Vallandingham, D.C., hereinafter referred to as "Vallandingham", and Brett K. Allan, D.C., hereinafter referred to as "Allan", for violations of their corporate obligations and fiduciary duties as Directors of Defendant PITS.

Plaintiff Barkal is the sole owner of Plaintiff Pemcor, Defendant Vallandingham is the sole owner of Defendant War, and Defendant Allan is the sole owner of Defendant Kellett.

28.     Formed in January, 2003, operate an ambulatory outpatient surgery center providing medical services to patients with work-related injuries, Defendant Beach Cities provided such services for twenty four (24) months, and then ceased doing so in December, 2004, with approximately $13 million dollars ($13,000,000.00) in outstanding third-party insurance billing claims.

29.     Formed in July, 2002, to likewise operate an ambulatory outpatient surgery center providing medical services to patients with work-related injuries, Defendant PITS provided such services for about six (6) months, and then ceased doing so in January, 2003, with approximately 2.6 million dollars ($2,600,000.00) in outstanding third-party insurance billing claims.

30.     From the time that Defendants Beach Cities and PITS, respectively, ceased providing medical services to patients until the present, the primary business function of Defendants Beach Cities and PITS has been to collect from the third-party insurance carriers the approximately 15.6 million dollars ($15,600,000.00) in outstanding billing claims.

31.     In 2005, one of the third-party insurance carriers, the Zenith Insurance Company, hereinafter referred to as "Zenith", an insurance carrier handling injured worker claims in the State of California, sued Defendants herein, Vallandingham and Allan for fraud (filing fraudulent insurance medical claims, i.e. "billing fraud"), after which Defendants Vallandingham and Allan admitted their fraud, and quickly repaid and/or waived several hundred thousand dollars in claims to settle the Zenith litigation.

32.     Since the Zenith litigation, based on the alleged fraud of Defendants Vallandingham and Allan, Zenith and other third-party insurance carriers, including, but not limited to, the State Compensation Insurance Fund (SCIF), ceased all payments of the outstanding medical billing claims of Defendants Beach cities and PITS.  Some of the other third-party insurance carriers are also

6

currently pursuing litigation at the Worker's compensation Appeals Board (WCAB) designed to render all of the outstanding medical billing claims valueless.

33.     Defendants Vallandingham and Allan had knowledge that the third-party insurance carriers had ceased payments of the outstanding medical billing claims of Defendants Beach Cities and PITS. Defendants Vallandingham and Allan failed to take appropriate measures to protect and to preserve the 15.6 million dollars ($15,600,000.00) in outstanding accounts receivable assets of Beach Cities and PITS, i.e., the outstanding medical billing claims, and instead, breached their agreements with their equal General Partner in Beach Cities, Plaintiff Pemcor, and their equal shareholder in PITS, Plaintiff Barkal.

34.     Plaintiff alleges that the following are factual examples of Defendants' misconduct:

A.  Fraudulent billing: 2001 - 2004

Defendants' submission of false billing claims to insurance companies for services they did not actually perform to greatly increase the amount of payments that they received from insurance companies.

B.  Hunter Agency: 2005 - 2008

Defendant Hunter was at all times material herein, the agent, servant and/or employee of Defendants' and took actions to insure that Vallandingham and Allan's equal General Partner in Beach Cities and equal shareholder in PITS, Plaintiffs Pemcor and Barkal, respectively, were deliberately not informed about Partnership money decisions, all to their damage.

Supplemental Breach of Partnership Agreement

35.     Plaintiffs' contend that Defendants unlawfully and in Breach of the Partnership Agreement retained a local attorney who then filed on Defendants' behalf, an application for a

7

receiver, even though Defendants knew that retaining an attorney without unanimous consent was a Breach of the Partnership Agreement.

36. Pursuant to the Partnership Agreement, Plaintiffs seek to terminate Defendants Vallandingham and Allan's status as General Partners in Beach Cities, and to divest them of their ownership interests in Beach Cities.

37. For their fraud, Breach of Contract, conversion and intentional infliction of emotional distress, and breaches of fiduciary duties, the Plaintiffs seek judgment against equal partners, Defendants Vallandingham and Allan, individually and against their related companies for restitution, general, special and exemplary damages and attorneys fees.

<u>Facts Common to All Causes</u>

38.    In January, 2003, Defendant Beach Cities was formed with three (3) California corporations, Pemcor, War and Kellett, owned, respectively, by Plaintiff Barkal and Defendants Vallandingham and Allan, each as one-third (1/3) equal, General Partners.

Beach Cities purpose was to operate an ambulatory surgical center providing medical services to patients suffering from work-related injuries.

39.    The Defendants' alleged misconduct against Plaintiffs occurred in eight (8) Beach Cities business activities:

<u>2004</u>:    Defendants Vallandingham and Allan allegedly admit "billing fraud";

<u>2005</u>:    Zenith litigation, as previously alleged in Paragraph 6, supra;

<u>2006</u>:    State Compensation Insurance Fund (SCIF) "secret" 'Global Settlement' negotiations and Beach Cities partnership distributions;

2007:    Fraudulent appointment of Receiver, "Consolidation" petition, and Beach Cities partnership distributions.

<u>Defendants Vallandingham and Allan admit "billing fraud"</u>

40.     In 2004, in separate depositions in two WCAB cases, Defendants Vallandingham and Allan allegedly admitted, under oath, that they had intentionally filed fraudulent claims for professional medical services that they had personally provided to patients with work-related injuries who had filed claims at the WCAB.

<u>Zenith Litigation</u>

41.     In 2005, based on Defendants Vallandingham and Allan's alleged admissions of fraudulent billing practices, Zenith sued Vallandingham, Allan, El Camino, Chula Vista, Beach Cities, PITS and West Coast and alleged a conspiracy to violate Business and Professions Code §17200 by filing intentionally false claims under Insurance Code §1471.4, Labor Code §139.3 and Penal Code §553.

42.     Defendants Vallandingham and Allan allegedly settled the Zenith litigation personally and on behalf of their respective companies/defendants, El Camino and Chula Vista as follows: they (a) <u>waived</u> their admittedly fraudulent billing claims; (b) <u>waived additional claims</u> that they had fraudulently billed as "vocational rehabilitation services"; (c) <u>repaid</u> sums of money previously paid to them by Zenith for the admittedly fraudulent billing claims; and (d) agreed <u>never to treat</u> patients insured by Zenith.

43.     Plaintiffs herein and Zenith Defendant West Coast settled, too, and agreed to forego potential legal claims against Zenith as a result of Zenith's allegations against West Coast. In return, Zenith agreed to process and pay all of West Coast's outstanding billing for professional services provided to patients insured by Zenith. To date, Zenith has not paid the West Coast outstanding billing due.

9

44.     Plaintiffs contend that Hunter is not licensed to practice law in the State of California, but in correspondence and legal pleadings he regularly "holds himself out" as admitted to practice law in California.

45.     In correspondence, discussions, and legal pleadings written and filed on behalf of Beach Cities and PITS, Defendant Hunter has provided advice on law, procedure, and strategy in preparation for, and at WCAB lien proceedings.

46.     Defendant Hunter's tortuous conduct at the WCAB includes all of the following:

a.  On more than one occasion he has represented lien claimants without "authority" to do so;

b.  he has routinely settled Defendants Beach Cities and PITS lien claims "short", for less than their reasonable value, without the unanimous consent of the General Partners of Beach Cities, and without the knowledge of all shareholders of PITS;

c.  he has routinely litigated lien trials at the WCAB and provided legal advice to Defendants Beach Cities and PITS on law, procedure and strategy;

d.  he has routinely lost pivotal Beach Cities lien trials at the WCAB, in spite of Plaintiffs' meritorious claims, due to lack of preparation and/or competency;

e.  in 2006 and 2007 he acted "professionally" in a conflict-of-interest position, because he represented the General Partners in Beach Cities while simultaneously representing a Receiver opposed to the interests of one of the Beach Cities General Partners;

f.  in 2007, he conspired to negotiate a "secret" 'Global Settlement' of all Beach Cities and PITS liens with SCIF without the knowledge and consent of all Beach Cities partners and without the knowledge of all PITS shareholders;

10

g.  he has generally conducted himself at the WCAB in a way inimical to Beach Cities and PITS "best interests" by alienating insurance company attorneys, thereby damaging Beach Cities and Pits goodwill;

h.  he has been repeatedly absent from required WCAB court proceedings with out appropriate advance notice to the court with so many excuses that one WCAB Judge recently demanded a formal explanation from him under penalty of perjury;

i.  because his "professional" credentials are uncertain, the Presiding Judge of the WCAB ordered that activities ion Beach Cities and PITS lien claims be stayed pending an investigation of his professional history.

47.    The Plaintiffs have repeatedly demanded that the Defendants cease their use of Defendant Hunter, which occurred without the required unanimous partnership consent.  Although his representation at the WCAB has never been in Beach Cities and PITS best interests because of his previously described conduct, the Defendants continued to utilize him from 2005 through, at least March 31, 2008.

### SCIF "Secret" 'Global Settlement' Negotiations

48. Without the required knowledge and consent of all Beach Cities equal General Partners, or equal shareholder Barkal's knowledge of any PITS corporate vote to do so, the Defendants have conspired to effect a "Global Settlement" of all Beach Cities and PITS billing claims submitted to SCIF.

### Beach Cities Partnership Distributions

49.    Without the require knowledge and consent of all Beach Cities equal General Partners, or equal shareholder Barkal's knowledge of any PITS corporate vote to do so, the

11

Defendants have made regular, unauthorized profit distributions from January 31, 2006 to the present. At the same time, they failed to maintain enough cash reserves in the Beach Cities partnership account and in the PITS corporate account to carry out the regular day-to-day business activities of both the partnership and corporate entities, including but not limited to, the failure to hire legal counsel, by, through, and with unanimous consent, to defend the entities in the WCAB "consolidation" proceedings.

<u>Unlawful Appointment of Receiver</u>

50.     In 2007, the Defendants sought and obtained a "receiver" for Beach Cities to essentially 'cancel' equal General Partner Plaintiff Pemcor's partnership vote. The Defendants intentionally misrepresented in their declarations under penalty of perjury that Plaintiff Pemcor had "abandoned" Beach Cities. However, the Defendants were conversant with at least multiple letters, faxes, memos, lien paperwork, and telephonic and personal contact, and discussions with Plaintiffs that clearly demonstrated, contrary to their perjurious statements of "abandonment", that Plaintiff Pemcor was a regular, active, hands-on participant in Beach cities business activities.

<u>"Consolidation" Petitions at WCAB</u>

51.     In "consolidation" petitions filed at the WCAB on February 15, 2007 and February 21, 2007, insurance companies California Insurance Guaranty Association (CIGA) and American Casualty Company of Reading, Pennsylvania (America Casualty) asked the WCAB to "consolidate" all unresolved liens at the WCAB filed on behalf of Beach Cities and PITS, and Plaintiff West Coast. The purpose was to render all of the liens valueless because of an alleged "licensure" issue. The Defendants have breached their fiduciary duties to properly defend Defendants Beach Cities and PITS.

12

52.     They failed to retain reputable legal counsel on healthcare licensure issues, and to secure the expert legal testimony of the three (3) law firms who gave Beach Cities expert legal opinions and the law firm that gave PITS its expert legal opinions that both could legally operate with their current licensure.

### Beach Cities Partnership Distributions

53.     Without the required knowledge and consent of all Beach Cities equal General Partners, or equal shareholder Barkal's knowledge of any PITS corporate vote to do so the Defendants have made regular, unauthorized profit distributions from January 31, 2006 to the present.  At the same time, they failed to maintain enough cash reserves in the Beach Cities partnership account and in the PITS corporate account to carry out the regular day-to-day business activities of both the partnership and corporate entities, including the failure to retain appropriate legal counsel to defend the entities in the current WCAB "consolidation" proceedings.

### Agreement of Limited Partnership of Beach Cities Surgery Center, LP (Partnership Agreement)

54.     The Beach Cities Partnership Agreement mandates that all Beach Cities Partnership decisions must be made only by <u>unanimous</u> consent:

> "Subject to the limitations set forth in this agreement (including, without limitation, those set forth in this Article V) the General Partners shall direct the business and affairs of the Partnership and in so doing shall manage, control and have all the rights and powers which may be possessed by general partners under the Act.  The rights and powers of the General Partners her under shall be <u>exercised</u> by them in such a manner as they may <u>agree</u>.  In the

13

absence of an agreement among the General Partners, <u>no General
Partner shall exercise</u> any of such rights and powers <u>without</u> the
<u>unanimous consent</u> of all General Partners."

55.    Two (2) of Defendant Beach Cities General Partners undertook all of the following
partnership activities <u>without</u> the <u>unanimous consent</u> of all three (3) General Partners:

a.    Eliminated one General Partner's partnership vote by having a receiver appointed
    based on false declarations that the other General Partner had "abandoned" the
    Partnership;

b.    utilized the services of Defendant Hunter under false pretenses for fifteen (15)
    months, by claiming that he was licensed to practice law in another state, and that his
    admission to the California Bar was pending, then continued to utilize his services
    until March, 2008, long after Plaintiff General Partner Pemcor began vigorous, vocal,
    protests about using Hunter ten (10) months earlier;

c.    negotiated settlements of Beach Cities WCAB liens;

d.    permitted "short" settlements of Beach Cities WCAB lien claims;

e.    moved the contents of the partnership's principal place of business twice;

f.    were non-compliant with the Health Insurance Portability and Accountability Act
    (HIPAA), by improperly maintaining the Sorrento Valley office on Roselle Street;

g.    made unauthorized Partnership distributions;

h.    terminated employees Deanna Schumann, Vanessa Rodriguez, Delilah Guerrero,
    Elaine Reichl and Hector Sanchez;

i.    retained assorted attorneys to represent the Partnership including Joe La Costa,
    Esquire, Lawrence Solov, Esquire, and Robert McLaughlin, Esquire;

j.    failed to perform due diligence about Defendant Hunter;

14

k.  failed to provide a legal defense to the WCAB "consolidation" petition involving the Partnership;

l.  failed to pay legal fees for emergency legal services undertaken pursuant to the Special Power of Attorney clause of the Partnership Agreement performed to assist Beach Cities with its "consolidation" defense;

m.  refused to provide their equal General Partner the Partnership's financial records and ordered the Beach Cities bookkeeper, Ernie Dubnicoff, to do the same;

n.  refused to provide their equal partner with WCAB hearing calendars, so that it could monitor the status and progress of the Partnership's WCAB lien proceedings;

o.  negotiated a "secret" 'Global Settlement' with SCIF of all Partnership lien claims;

p.  changed the locks on the Partnership office but did not give their equal partner a key;

q.  closed the offices of Beach Cities and moved the files, books, records, and property into their personal residences.

56.  Two (2) of Defendant PITS three (3) equal shareholders, Defendants Vallandingham and Allan undertook all of the following corporate activities without a vote of all three (3) equal corporate shareholders:

a.  Negotiated settlements of PITS' WCAB lien claims;

b.  permitted "short" settlements of PITS" lien claims;

c.  moved the contents of the corporation's principal place of business, twice;

d.  were non-compliant with HIPAA, by improperly maintaining the Roselle Street office;

e.  made unauthorized corporate distributions;

f.  terminated employees Deanna Schumann, Vanessa Rodriguez, Delilah Guerrero, Elaine Reichl and Hector Sanchez;

15

g.  retained assorted attorneys to represent the corporation including Joe La Costa, Esquire, Lawrence Solov, Esquire, and Robert McLaughlin, Esquire;

h.  failed to perform due diligence about Defendant Hunter;

i.  failed to provide a legal defense to the WCAB "consolidation" petition affecting the corporation;

j.  refused to provide their equal shareholder the corporation's financial records and ordered the PITS bookkeeper, Ernie Dubnicoff, to do the same;

k.  refused to provide their equal shareholder with WCAB hearing calendars, so that he could monitor the status and progress of the corporation's WCAB lien proceedings;

l.  negotiated a "secret" 'Global Settlement' with SCIF of all corporate lien claims;

p.  changed the locks on the corporate office but did not give their equal shareholder a key;

q.  closed the offices of PITS and moved the files, books, records, and property into their personal residences.

57.    As a result of the Zenith lawsuit, losses to both the Partnership and corporation have resulted and the Plaintiffs have suffered economic damages, as direct and proximate result thereof.

58.    SCIF has paid Beach Cities and PITS lien claims from 2002-2005, but since the Zenith fraud litigation, SCIF suspended all payments to Beach Cities and PITS.

59.    Because of the Zenith litigation, and the Defendant Hunter's wrongful actions, and eventually stopped.

60.    From 2002 - 2005, Zenith has paid Plaintiff West Coast, but since the Zenith litigation, the bill payments from Zenith to West Coast have trickled to nothing.

Respectfully submitted,

Joseph Giovanazzi, #42827
Attorney for Plaintiff
1402 Market Street
Vista, CA 92084
Phone: (760) 622-6364


Michael J. Galanis, #7028-45
as local counsel for Attorney Joseph
Giovanazzi, Attorney for Plaintiffs
275 U.S. Highway 30, Suite 250
Dyer, IN 46311
(219) 865-1200

17